# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAY N.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 2:20-cv-04741-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On May 28, 2020, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her application for a period of disability and disability insurance benefits pursuant to Title II of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is reversed, and this matter is remanded for further administrative proceedings.

///

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**ADMINISTRATIVE HISTORY**

On March 20, 2017, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on September 11, 2012. (Administrative Record [AR] 15, 152-55.) Plaintiff alleged disability because of anxiety, arm and hand pain, spine pain, and hip pain. (AR 62.) After the application was denied initially, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 86-87.) At a hearing held on May 1, 2019, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert. (AR 32-60.)

In a decision issued on May 30, 2019, the ALJ denied Plaintiff's disability claim after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 15-27.) Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of September 11, 2012 through the date last insured of December 31, 2017. (AR 17.) She had severe impairments consisting of mild cervical spine degenerative disc disease; lumbar spine degenerative disc disease; right elbow lateral epicondylitis; history of right shoulder impingement syndrome; and bursitis of the hips. (*Id.*) She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 19.) She had a residual functional capacity for medium work. (*Id.*) She could perform her past relevant work as an office manager and as an accountant. (AR 26.) Thus, the ALJ concluded that that Plaintiff was not disabled, as defined by the Social Security Act, since the alleged disability onset date of September 11, 2012 through the date last insured of December 31, 2017. (AR 27.)

On April 27, 2020, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Thus, the ALJ's decision became the final decision of the Commissioner.

///

## DISPUTED ISSUES

The parties raise the following disputed issues:

1. Whether the ALJ erred in finding Plaintiff did not suffer from a severe mental impairment; and

2. Whether the ALJ correctly assessed probative medical source opinions.

(ECF No. 17, Parties' Joint Stipulation ("Joint Stip.") at 3.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

For the reasons discussed below, reversal and remand for further administrative proceedings are warranted for Issue One, in which Plaintiff's challenges the ALJ's assessment of her alleged mental impairments. It therefore is

3

unnecessary to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## I. Mental Impairment (Issue One).

### A. Legal Standards.

Step two of the Commissioner's five-step evaluation requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. § 404.1520(a). An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). In other words, an impairment is not severe "when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (emphasis in original). For mental impairments, examples of basic work activities are the ability to understand, carry out, and remember simple instructions; the use of judgment; the ability to respond appropriately to supervision, coworkers, and usual work situations; and the ability to deal with changes in a routine work setting. *See* Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3.

A claimant's residual functional capacity ("RFC") represents the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Commissioner Social Sec.*

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original).  An ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  "The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *7.

Specifically, as relevant here, before rejecting a contradicted medical source opinion of an examining physician, an ALJ must provide "specific and legitimate" reasons that are supported by substantial evidence in the record.  *See, e.g., Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

**B.     Background.**

In August 2013, Dr. Fruchtbaum, an examining psychologist, issued an opinion about Plaintiff's mental condition as part of Plaintiff's workers' compensation case.  (AR 741-66.)  Plaintiff, who had worked as an accountant, had claimed work-related injuries from "stress arising from disturbing events at work including work overload, lack of support, incidents of unfairness and improper training."  (AR 743.)

Dr. Fruchtbaum's mental status examination revealed, in part, that Plaintiff "demonstrated diminished cognitive functioning in the clinical interview situation. [Plaintiff] was noted to be slow in thinking, distracted and defective in recall, concentration and attention."  (AR 750.)  Dr. Fruchtbaum also administered psychological tests that "confirmed residual abnormal levels of anxiety, somatization, manic-like agitation, mistrust, suspicion, confusion, disorganization, hopelessness and depression with low energy level, low self-esteem, social

withdrawal, pessimism, irritability and sad mood." (AR 756.) Dr. Fruchtbaum diagnosed Plaintiff with a depressive disorder not otherwise specified with anxiety and psychological factors affecting a medical condition. (*Id*.)

Dr. Fruchtbaum also opined about Plaintiff's mental limitations. Dr. Fruchtbaum stated that Plaintiff had a "moderate impairment" in three areas of mental functioning: (1) activities of daily living; (2) concentration, persistence, and pace; and (3) adaptation (deterioration or decompensation in complex work-like settings). (AR 760-61.) In this context, "moderate impairment" was defined as an impairment that is "compatible with some, but not all, useful functioning." (AR 760.) Dr. Fruchtbaum also assigned Plaintiff with a Global Assessment of Functioning ("GAF") score of 53. (AR 762.) "A GAF score between 51 and 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014).

The ALJ gave "no weight" or "little weight" to Dr. Fruchtbaum's opinion. (AR 25.) The ALJ declined to classify any of Plaintiff's impairments as a severe impairment (AR 17) and declined to include any mental functional limitations in the RFC assessment (AR 19).

### C. Analysis.

As an initial matter, any alleged error by the ALJ in classifying Plaintiff's mental impairments as non-severe at step two is not the basis for reversal, because the ALJ resolved step two in Plaintiff's favor by finding that Plaintiff did have other severe impairments. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out week claims. It is not meant to identify the impairments that should be taken into account when determining the RFC.") (citation omitted). Thus, the classification of Plaintiff's mental impairments as non-severe at step two could not have prejudiced Plaintiff. *See id.* at 1049 (because step two was decided in the claimant's favor, he

"could not possibly have been prejudiced" and this "cannot be the basis for a remand"); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) ("Thus, once [the claimant] prevailed at Step 2, it made no difference for the ALJ's ensuing analysis whether his medically determinable depression was previously considered 'severe.'"); *Parton v. Saul*, _ F. App'x _, 2021 WL 1546946, at *1 (9th Cir. April 20, 2021) ("When Step Two is decided in the claimant's favor, any error is harmless and cannot be the basis for remand.").

Rather, the dispositive question is whether the ALJ's ensuing analysis of Plaintiff's mental impairments, for purposes of the RFC assessment, accurately reflected Plaintiff's limitations based on all of the relevant evidence in the record. *See Buck*, 869 F.3d at 1049 (in assessing RFC, the ALJ "must consider limitations and restrictions by all of an individual's impairments, even those that are not 'severe'"). Here, Plaintiff has properly raised a challenge to the ALJ's RFC assessment by arguing that Plaintiff's mental limitations "impact her ultimate residual functional calculus" or "would further erode her ultimate residual functional calculus." (Joint Stip. at 11.)

As noted above, the ALJ's RFC assessment did not include any mental functional limitations (AR 19), which followed from the ALJ's finding that Dr. Fruchtbaum's opinion was entitled to "no weight" or "little weight" (AR 25). The ALJ explained why Dr. Fruchtbaum's opinion was assigned this weight:

> The undersigned gives no weight given to workers' compensation determination of disability and little weight given to assessment of 'moderate degree of impairment regarding her adaptation' because the term moderate is not defined as it is vague and ambiguous, and it calls for speculation as to its intended meaning. Dr. Fruchtbaum did not propose any specific functional limitations that would prevent [Plaintiff] from working, and did not provide an opinion on what [Plaintiff] could still do despite [Plaintiff's] impairments.

(AR 25-26.)

The Court reviews each of these reasons in turn, to determine whether specific and legitimate reasons based on substantial evidence were stated to discount Dr. Fruchtbaum's opinion.


### 1.     no weight to a workers' compensation determination.

The ALJ stated that "no weight" would be given to a workers' compensation determination of disability.  (AR 25.)

To the extent that the ALJ rejected Dr. Fruchtbaum's opinion merely because it was a workers' compensation determination of disability, this was not a legally valid reason.  Under Ninth Circuit precedent, medical opinions generated during workers' compensation proceedings are relevant to the issue of a claimant's RFC. *See Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988); *see generally* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  Such opinions will be given consideration even if they involve the ultimate issue of disability, an issue that is reserved solely to the Commissioner.  *See* SSR 96-5P, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.").  Thus, even though Dr. Fruchtbaum had issued an opinion in a workers' compensation case, and even if it had implicated the ultimate issue of disability, these would not be specific and legitimate grounds, by themselves, to disregard the opinion.


### 2.     failure to define "moderate."

The ALJ stated that Dr. Fruchtbaum's use of the term "moderate" was "not defined as it is vague and ambiguous, and it calls for speculation as to its intended meaning."  (AR 25.)

To the contrary, Dr. Fruchtbaum's use of the term "moderate" was expressly defined, in a manner that was not any less clear than how the term is defined and used in Social Security proceedings. Dr. Fruchtbaum's opinion expressly defined "moderate" as "compatible with some, but not all, useful functioning." (AR 760.) Although this definition did not precisely quantify the degree of limitation, neither does the Commissioner's own definition of "moderate." (AR 834 [stating the Commissioner's definition of moderate as "[t]here is more than a slight limitation in this area but the individual is still able to function satisfactorily"].) This lack of quantitative precision, however, does not prevent the widespread use of the term "moderate" in Social Security proceedings. *See O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698-98 (7th Cir. 2016) ("Agency regulations, as far as we can tell, do not quantify what is meant by a 'moderate' restriction, but the regulations do instruct ALJs to rate the degree of limitation on a 5-point scale of none, mild, moderate, marked, and extreme.") (citing 20 C.F.R. § 404.1520a). Because Dr. Fruchtbaum's expressed use of the term "moderate" was not unusually vague or ambiguous in comparison to how that term generally is used in Social Security proceedings, this was not a specific and legitimate reason to discount her opinion.

### 3. no specific functional limitations.

The ALJ stated that "Dr. Fruchtbaum did not propose any specific functional limitations that would prevent [Plaintiff] from working[.]" (AR 25-26.)

To the contrary, Dr. Fruchtbaum did propose specific functional limitations in mental areas of functioning. Specifically, Dr. Fruchtbaum stated that Plaintiff had moderate limitations in three areas of mental functioning, as noted above. (AR 760-61.) Although Dr. Fruchtbaum did not go so far as to state that these limitations were so serious that they would prevent Plaintiff from working altogether, Dr. Fruchtbaum was not required do so in order for the limitations nonetheless to be relevant to the RFC assessment. *See* SSR 96-8P, 1996 WL

374184, at *5 (commenting that limitations from a non-severe impairment, when combined with limitations from other impairments, may "be critical to the outcome of a claim").

### 4. failure to provide an opinion on what Plaintiff could still do.

The ALJ stated that Dr. Fruchtbaum "did not provide an opinion on what [Plaintiff] could still do despite [Plaintiff's] impairments." (AR 26.) Under the Commissioner's regulations, an opinion on what a claimant can still do despite the claimant's impairments is a prerequisite for a physician's report to qualify as a "medical opinion." *See Marsh v. Colvin*, 792 F.3d 1170, 1172 n.1 (9th Cir. 2015) (recognizing a medical opinion as statements that "reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite her impairment(s), and [her] physical or mental restrictions") (quoting 20 C.F.R. § 404.1527)).

To the extent that Dr. Fruchtbaum's report was disqualified as a medical opinion because she did not provide an opinion on what Plaintiff could still do despite Plaintiff's impairments, this involved an unduly narrow interpretation of what Dr. Fructhbaum opined in her report. By examining Plaintiff, noting observations from that examination, and opining that Plaintiff had moderate limitations in three areas of mental functioning (AR 760-61), Dr. Fruchtbaum presumably was opining that Plaintiff could still work in an environment that would permit those limitations. In other words, Dr. Fruchtbaum was opining about what Plaintiff could still do despite Plaintiff's impairments, thereby qualifying Dr. Fruchtbaum's report as a medical opinion. *See Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017) (holding that a doctor's report qualified as a medical opinion under the Commissioner's regulations when the physician "examined [the claimant], noted observations from that examination, and opined on her work limitations").

Even if this were not enough to qualify Dr. Fruchtbaum's report as a medical opinion, the report nonetheless would qualify as a medical opinion on the alternative ground that Dr. Fruchtbaum assigned a GAF score of 53.  (AR 762.)  The Commissioner treats GAF scores as medical opinion evidence.  *See Sizemore v. Berryhill*, 878 F.3d 72, 82 (4th Cir. 2017).  Moreover, the GAF score, by definition, was a medical opinion because it was Dr. Fruchtbaum's subjective opinion on what Plaintiff could still do despite Plaintiff's impairments.  *See Garrison*, 759 F.3d at 1002 n.4 ("A GAF score is a rough estimate of an individual's psychological, social and occupational functioning used to reflect the individual's need for treatment.") (quoting *Vargas v. Lambert*, 159 F.3d 1161 1164 n.2 (9th Cir. 1998)); *see also Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010) (describing a GAF score as "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning") (citation and internal quotation marks omitted).  "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement."  *Garrison*, 759 F.3d at 1002 n.4.

To be sure, the ALJ found that GAF scores have limited evidentiary value.  (AR 25 n.2; AR 26 n.5.)  But the ALJ directed this finding to other medical opinions, not to Dr. Fruchtbaum's opinion.  The ALJ did not reject Dr. Fruchtbaum's opinion because her assigned GAF score had limited evidentiary value.  Rather, the ALJ found that Dr. Fruchtbaum failed to provide an opinion on what Plaintiff could still do despite Plaintiff's impairments (AR 25-26), which was not accurate.  The Court is constrained to review the reason that was stated.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  The reason stated here was not a specific and legitimate reason to discount Dr. Fruchtbaum's opinion.

### D. Conclusion.

The exclusion of mental functional limitations from the RFC assessment was undermined by the absence of specific and legitimate reasons based on substantial evidence to discount the examining psychologist's opinion. Accordingly, reversal is warranted.

## II. Remand for Further Administrative Proceedings.

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Here, the record raises factual conflicts and ambiguities about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (stating that remand for an award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted). For example, Dr. Fruchtbaum's opinion was "inconsistent with the reports of other physicians." *See Dominguez*, 808 F.3d at 409. It therefore is inappropriate to credit Dr. Fruchtbaum's opinion regarding the extent of Plaintiff's limitations as true. *See id.* Moreover, "it is up to the ALJ, not the court, to determine how . . . impairments affect the formulation of [the claimant's] RFC." *See id.*

///

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the final decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED:  April 26, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE